## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| GRANT GRIER, | ) | CASE NO. 1:20-cv-1919 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CUYAHOGA COUNTY, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion for summary judgment filed by defendant Cuyahoga County (the "County"). (Doc. No. 24.) Plaintiff Grant Grier ("Grier") filed a brief in opposition (Doc. No. 27) and the County filed a reply (Doc. No. 29).[1] For the reasons discussed herein, the County's motion is granted and this case is dismissed.

## I.      Procedural Background

On August 27, 2020, Grier filed a complaint against the County, Armond Budish, Clifford Pinkney, Eric Ivey, and two John Does alleging facts and claims relating to his encounter on August 27, 2018 with two Euclid City Jail correctional officers following his arrest for traffic violations. (Doc. No. 1.) On November 19, 2020, with leave of Court, Grier filed an amended complaint, retaining as defendants only the County and the two John Does. (Doc. No. 11.) In his amended complaint, Grier asserted a *Monell*[2] claim against the County, a fourth amendment claim

---

[1] Throughout this order, all page number references are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court.

[2] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

of excessive force against all defendants, and three state law claims (willful/wanton/reckless conduct; assault and battery; intentional infliction of emotional distress).

The gravamen of Grier's claims is that, around 11:30 a.m. on August 27, 2018, he was arrested for various traffic-related offenses[3] and transported to the Euclid City Jail where he encountered two correctional officers. Grier claims he sought, but was denied, medical treatment for head, neck, and back pain. Grier further claims that, despite cooperating with the officers and posing no threat to them, without provocation and while Grier was handcuffed behind his back, Doe 1 officer, assisted by Doe 2 officer, pressed against Grier's throat—rendering him unable to breath—and smashed his head into the wall. Grier acknowledges that the entire encounter was captured on the jail's cameras.

On December 4, 2020, following the Case Management Conference where all parties were represented, this Court issued the Case Management Plan and Trial Order ("CMPTO") required by Fed. R. Civ. P. 16(b), substantially adopting the dates and deadlines proposed by the parties. (*See* Doc. No. 14; *see also* Doc. No. 13, Report of Parties' Planning Meeting.) On June 30, 2021, on plaintiff's motion, a non-document amended CMPTO extended the case management dates and deadlines.

It is undisputed that Grier never conducted any discovery, nor did he attempt to further amend his complaint to substitute names for the "John Does," although he timely came to know their identities (Michael McClelland and Robert Love) and could have done so. The County

---

[3] Grier has not sued the City of Euclid, the Euclid Police Department, or the arresting officer(s), nor made any specific claims relating to the arrest itself, although he suggests that his alleged neck and back injuries were initiated by rough treatment during the arrest. (*See* Doc. No. 23, Deposition of Grant Grier at 16.) That said, the version of the arrest offered by Grier during his deposition (*see id.* at 13–31) is not supported by the dashcam/back seat camera recordings filed in support of the summary judgment motion.

2

deposed Grier on June 1, 2021 and filed the deposition transcript in support of the instant motion. (*See* Doc. No. 23.)

It is also undisputed that, as already alluded to, the entire incident alleged in the amended complaint was recorded by a combination of dashboard and back seat cameras in the police cars (*see* Doc. No. 24-3, Declaration of Mitch Houser, Ex. A[4]), plus surveillance cameras at the jail (*see* Doc. No. 24-4, Declaration of Jason Kossman, Ex. A), copies of which were filed in support of the instant motion.

## II.     Discussion

### A.     Summary Judgment Standard

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v.*

---

[4] Given that the amended complaint states only claims relating to the events at the Euclid City Jail, and not the events surrounding the actual arrest of Grier, the videos from the police vehicles—relating to the traffic stop—are somewhat extraneous but do provide insight into Grier's interaction with the arresting officers and his assertions (not made a part of this lawsuit) that *they* injured his neck (although, like the jail video, the video evidence from the traffic stop does not support Grier's version of events).

*Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co*., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ*., 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.).

Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ*., 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted).

4

Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); s*ee also Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### B.      Facts and Analysis

In support of its motion for summary judgment, the County submitted not only Grier's deposition and several affidavits (including official incident reports), but also the video recordings already referenced. Grier does not challenge these recordings in any way and, in fact, states that he "stands on the video evidence" to establish that there are genuine facts in dispute. (Doc. No. 27 at 2.)

Grier conducted no discovery. The "statement of undisputed facts" in his opposition brief consists of a series of numbered paragraphs with conclusory statements completely unsupported by any citation to the record (much less the pinpoint citations required by this Court's Initial Standing Order). (*See id*. at 2–5.) In fact, this statement of "facts" is almost a verbatim recitation of the allegations in Grier's amended complaint, which is entirely insufficient under the summary judgment standard cited above.

Although in evaluating defendant's motion for summary judgment the Court must view the facts and draw all reasonable inferences in the light most favorable to Grier, where, as here, there exists in the record a videotape capturing the events in question, the Court must also "view[ ] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only

credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape."). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

It is undisputed that Grier was arrested during a traffic stop in Euclid, Ohio on August 27, 2018 and transported to the Euclid City Jail (the "Jail"). Grier has not sued over any part of the arrest and transport; therefore, the County's recitation of those facts, although providing some context,[5] is extraneous and need not be considered in the Court's analysis of the summary judgment motion.

Grier claims that he was subjected to excessive force by two John Doe correctional officers at the Jail. But Grier has never identified either officer by name, only claiming they were County employees. Grier argues in passing on the final page of his opposition brief that he should be permitted to amend his complaint (again) to name those officers. (Doc. No. 27 at 13.) But this does not constitute a proper motion for leave to amend. *Smith v. Nationstar Mortg., LLC*, 756 F. App'x 532, 536 (6th Cir. 2018) (rejecting plaintiff's "'throwaway' request for leave to amend his complaint [contained] in his opposition to [d]efendants' motion to dismiss").[6] Moreover, it is too

---

[5] The Court has viewed the videos of the arrest because they were submitted by the County in support of the dispositive motion. Having done so, the Court merely notes that Grier's description of the events is belied by the recordings. For example, he claims he "did no screaming" except when he was "inside of the vehicle." (Doc. No. 23 at 28.) The videos, as confirmed by the arresting officers' affidavits and incident reports, show constant screaming almost from the moment Grier was first stopped until a short time after he was placed in the back of the police vehicle. (*See* Doc. No. 24-1, Declaration and Incident Report of George Harper; Doc. No. 24-2, Declaration and Incident Report of Kevin Kelly; Doc. No. 26, Dash Videos.)

[6] The deadline for amending the pleadings was December 21, 2020. (*See* Doc. No. 14, Case Management Conference Plan and Trial Order.) To obtain pre-trial modification of that scheduling order, plaintiff would need to show good cause (Fed. R. Civ. P. 16(b)(4)) and that there would be no undue prejudice to the defendants if he were permitted to amend at this time. *See Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017) (court must consider whether the defendants will "experience possible prejudice") (citation omitted). To establish good cause, plaintiff would have to demonstrate that, despite his diligence, he could not identify the John Doe officers before December 21, 2020. He has made no attempt to meet that test. Further, to add individual defendants at this time, *after* discovery

late for Grier to amend his complaint because the two-year statute of limitations for Section 1983 claims has already expired. "Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties[]" and "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run[.]" *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing cases); *see also Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (action not commenced against "John Doe" defendants until Does identified and served with process), *cert. denied*, 394 U.S. 987, 89 S. Ct. 1468, 22 L. Ed. 2d 763 (1969).[7] The John Doe defendants are, therefore, dismissed.

Grier's first claim for relief in the amended complaint (and, arguably, his second claim to some extent) asserts that the County is liable for a section 1983 violation under the principles set forth in *Monell*, *supra*, where the Supreme Court held that a government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell,* 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*.; *see City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (government entity can be found

is complete and a dispositive motion has been filed and briefed, would be highly prejudicial to all the defendants. Further it would require the reopening of discovery and, possibly, another round of dispositive motions, resulting in significant delay in resolution of the case.

[7] Grier's assertion that relation back applies has no merit. He claims the officers have been on notice of this lawsuit, as evidenced by "the affidavits and declarations they have provided in their defense[,]" and that "they knew or should have known that but for a mistake concerning their identities, this action would have personally named them." (Doc. No. 27 at 13.) There was no "mistake" regarding the officers' identities; the only mistake was Grier's—he failed to timely serve them and/or to timely amend his complaint to add them despite his knowledge of their identities. Nor were the officers' affidavits and declarations filed in *their* defense, since there would be no need to defend in a lawsuit where one is not a party; rather they were filed in support of the County's motion for summary judgment.

liable under § 1983 "only where the [entity] *itself* causes the constitutional violation at issue") (emphasis in original).

To prevail on a *Monell* claim, Grier must establish both that a constitutional violation occurred and that it occurred because of a County policy or custom. *Gale v. O'Donohue*, 751 F. App'x 876, 882 (2018). "A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.), *cert. denied*, 510 U.S. 1177, 114 S. Ct. 1219, 127 L. Ed. 2d 565 (1994)).

For purposes of this motion, and although the record evidence—particularly the videos— does not support any constitutional violation, the Court will assume, *arguendo*, there was a constitutional violation. Even so, Grier fails to establish a policy or custom that would make the County liable for any such violation.

The Sixth Circuit has recognized "at least four avenues a plaintiff may take to prove the existence of a [government entity's] illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id*. Grier pursues his *Monell* claim(s) only under the third and fourth avenues. (*See* Doc. No. 11 at 9–10 ¶¶ 41–46.)

Grier alleges a general failure by the County to properly train or supervise (and discipline) its corrections officers at the Jail, including the two unnamed corrections officers that he

8

encountered.[8] In order to establish a failure-to-train claim, Grier must show that: "1) the [County's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the [County's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006) (citation omitted). Further, the Supreme Court has held that there is liability for a failure to train only when that failure reflects "a 'deliberate' or 'conscious' choice." *City of Canton v. Harris*, 489 U.S. at 389.

The County argues that it did not fail to train or supervise its corrections officers. Corrections Officers McClelland and Love (who are the unidentified "John Does") had over twenty years each of on-the-job training. McClelland was employed by the County Sheriff's Office from June 10, 1999 until his retirement on November 1, 2020. (Doc. No. 24-5, Declaration of Michael McClelland ¶ 2.) At the time of his retirement, he was a Corrections Officer Corporal. (*Id*. ¶ 4.) He attests that training occurred daily on the job and that he received specific training on use of force, subject control techniques, and response to resistance. (*Id*. ¶¶ 5–6.) Similarly, Love attests that he has been employed by the Sheriff's Office since March 1996 and that he received all the same training as McClelland, in addition to training in de-escalation techniques. (Doc. No. 24-6, Declaration of Robert Love ¶¶ 2–4.) As for Grier's claim that the County tolerated a pattern of constitutional violations (the so-called "inaction theory"), the County asserts that Grier has produced no evidence to support that claim and relies solely upon hearsay and the allegations of his complaint. (Doc. No. 24 at 21–22.)

---

[8] This general allegation is the type of *respondeat superior* claim (based on no more than a government entity's ability to control its employees) that case law has consistently held is not cognizable under § 1983. Since Grier did not identify the two corrections officers, his claim is reduced to such generalities.

In opposition to the County's motion seeking summary judgment on the *Monell* claim(s), Grier fails to produce any training policy of the County and/or to identify perceived flaws in that training policy. He fails to submit any evidence of faulty supervision. In fact, he never even *mentions* training and/or supervision in his opposition brief. Similarly, Grier fails to produce any evidence of his allegation of a culture of tolerance of constitutional violations. Grier offers nothing but hearsay and simply asserts that the County is not entitled to summary judgment.

Grier cites first to a December 22, 2020 report on *cleveland.com* that the County has paid more than $1 million to settle lawsuits resulting from several inmate deaths that began in 2018. (Doc. No. 27 at 7.) Aside from the fact that Grier has not produced a copy of that alleged report, even if he had done so, it would be inadmissible hearsay and would not be evidence of either a failure to train or a tolerance of unconstitutional behavior. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020) (quoting *Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, Nos. 08-12247, 08-12274, 2010 WL 987772, at *3 (E.D. Mich. Mar. 12, 2010) ("If offered for the truth of the matter asserted, newspaper articles . . . constitute inadmissible hearsay.")).

Grier's opposition also points ineffectively to the fact, presumed for the sake of argument to be true, that "[t]he former director of county corrections, Kenneth Mills, is currently in trial . . . for bad acts and omissions which led to the constitutional rights deprivations suffered by thousands of Cuyahoga County Jail inmates." (Doc. No. 27 at 7.) Again, even if Grier had presented something by way of evidence to support this assertion, it would not amount to proof for his claims herein; it would only prove that Mills is on trial.

Grier cites *Black v. Hicks*, 157 N.E.3d 193 (Ohio 2020), as holding that "the police department had an unwritten custom and practice of using violence and arrests to intimidate people[,]" which he characterizes as a "complain[t] of constitutional rights violations at the hands

of Cuyahoga County Officers." (Doc. No. 27 at 7. But there is one small problem with Grier's reliance on that case—it involved officers from the City of East Cleveland, not Cuyahoga County officers.

Finally, Grier "asks this Honorable court to take judicial notice of the twenty-one other actions filed in this jurisdiction, which each allege constitutional rights deprivations committed by the Cuyahoga County Jail staff and decisionmakers." (*Id*. at 7–9, listing the cases.) Grier argues that

> 21 allegations within 21 civil suits all claiming constitutional rights violations at the hands of Cuyahoga County Jail staff, policymakers and decisionmakers is sufficient in and of itself to establish at least a question of whether a genuine dispute exists as to whether the County has clear persistent record of unlawful activity; that there has been notice or constructive notice of constitutional rights violations; that there has been tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction, finally that the defendant's custom was the moving force or direct causal link in the constitutional deprivation.

(*Id*. at 9.) Even if the Court were to take judicial notice of these cases, Grier (again) offers no legal authority for how such judicial notice would establish a genuine dispute of fact in *this* case. Taking judicial notice "that 'this jail, with this jailer, has been the subject of several civil rights lawsuits,' [as requested by plaintiff] . . . [would] fall short of establishing 'active unconstitutional behavior,' or 'a widespread pattern of constitutional violations[.]'" *Hanson v. Madison Cnty. Detention Ctr.*, 736 F. App'x 521, 539 (6th Cir. 2018) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) [first] and *Doe v. Warren Consol. Sch.*, 93 F. App'x 812, 822 (6th Cir. 2004) [second]).

As correctly argued by the County, none of the pleadings, news articles, or lawsuits relied upon by Grier are *evidence* under Fed. R. Civ. P. 56. Equally important, none of these items are in the record of this case. Therefore, even assuming a constitutional violation occurred (which, again,

does not appear to be the case), Grier fails to establish liability on the part of the County, the only remaining defendant.

## III.    Conclusion

For the reasons set forth herein, the unidentified "John Doe" defendants are dismissed with prejudice along with all federal claims against them. The County's motion for summary judgment in its favor on all *Monell* claims is granted. The Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the state law claims and those are all dismissed. This case is closed.

**IT IS SO ORDERED**.

Dated: January 11, 2022

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**